CARBORUNDUM COMPANY, PLAINTIFF-APPELLANT, *v.* BOWERS, TAX COMMR., DEFENDANT-APPELLEE.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 26141. Decided January 31, 1963.

*Messrs. Bricker, Evatt, Barton, Eckler & Niehoff, Mr. Stanley C. Lebold,* for plaintiff-appellant.
*Mr. William R. Saxbe,* attorney general, for defendant-appellee.

HURD, J. This is an appeal from a decision of the Board of Tax Appeals (hereinafter referred to as the Board) wherein the Board held that certain equipment purchased by the Carborundum Company (hereinafter referred to as the appellant) was subject to the Ohio sales tax.

There is no dispute as to the facts concerning the appellant's purchase and use of this equipment. The facts are contained in a transcript of testimony taken before the Board, an agreed statement of facts filed with the Board, and a deposition

of one, Dr. George P. Eddy, Jr., which was made part of the record in the case. The only testimony in evidence in the record is that produced by the appellant, there being no evidence or testimony introduced by the Board.

From the year 1956, appellant has been operating a plant in Logan, Ohio, where it manufactures for sale abrasive products such as abrasive grinding wheels, which range in size from less than one inch to seventy-two inches, and which, like sandpaper, vary in texture, coarseness and shape, depending upon the use for which they are intended.

The principal ingredient of these abrasive products is graded abrasive grain, either silicon carbide or fused aluminum oxide.

The abrasive grain, ranging from a small gravel size to a size much finer than flour, is mixed with various resins and shellac bonding materials, some liquid and some powered, in mixing vats, to produce a dry "mix." Specific sizes of grain are used in specific mixes to produce specific types of wheels. There are approximately forty mixing vats in the mixing department.

The dust collecting equipment attached to the mixing vats removes fumes created by the liquid bonding agents and prevents dust from one batch getting into another batch, thus preventing contamination of the mix which would impair its quality and in some cases render it useless.

The fume exhaust and dust collecting equipment here under consideration consists of the following items: 1) two bag-type dust collectors which are installed in the Mixing Department; 2) three units, of two each, of cyclone dust collectors installed in the Finishing Department; and 3) numerous metal hoods, piping and exhausts located in both the Mixing and Finishing Departments.

The above outlined equipment performs three functions as follows:

1) It protects the production employees from physical injury. There is no dispute as to this fact which was established by the testimony of Dr. Eddy.

The Board so found and stated in its journal entry as follows:

"*The Tax Commissioner did not present any witnesses to*

*refute the testimony of Dr. Eddy and it appears to this Board, from the testimony and evidence which was presented, that the Fume Exhaust and Dust Collection Equipment is necessary for the physical protection of the production employees."* (Emphasis supplied.)

2) The second function is to protect the production machinery from damage and to maintain the productivity thereof.

3) The third and incidental function of the equipment is the disposal of waste material, to-wit, dust.

The question presented by the record is whether or not the equipment so used for the purposes above enumerated is subject to Ohio sales tax.

The assignments of errors are as follows:

"1. The decision of the Board is contrary to law.

"2. The decision of the Board is unreasonable."

It is the contention of the appellant that the sections of the law excluding the purchases so described from taxation in effect at the time the purchases were made are as follows:

"As used in Sections 5739.01 to 5739.31, inclusive, Revised Code:

"* * *

"(E) 'Retail sale' and 'sales at retail' include all sales except those in which the purpose of the consumer is:

"* * *

"(2) * * * to use or consume the thing transferred directly in the production of tangible personal property for sale by manufacturing, processing, refining, or mining. * * *."

Considering first the function performed by this fume and dust removal equipment in the manufacture of this company's product, to-wit: the protection of production employees from physical injury, the Board has found, as above set forth, "that the Fume Exhaust and Dust Collection Equipment is necessary for the physical protection of appellant's production employees."

It is difficult, if not impossible, to reconcile the position of the Board as expressed in its opinion with the position which it now takes on this appeal.

Furthermore, Dr. Eddy, who is a Doctor of Medicine and a noted specialist in the field of respiratory diseases, a fact acknowledged by the Board, testified that without the exhaust

equipment in question, the concentration of dust products in the air at appellant's Logan plant "would be much above acceptable concentration." He further testified that where there is no dust exhaust and collection equipment, a number of appellant's production employees "would develop pneumoconiosis or so-called silicosis after a number of years of exposure." The Doctor further testified that there is no other practical method of protecting the employees from this harmful dust and that the dust collection equipment is "absolutely necessary" for the physical protection of appellant's production employees.

It is a fact that the rules of the Tax Commissioner have in the past excluded such purchases from taxation. Reference is made to Rule 39, as amended March 5, 1952, and in effect until January 1, 1962, which reads as follows:

"Personalty Used or Consumed in Manufacturing, Processing and Refining. Under Section 5546-1, General Code (Section 5739.01 [E], Revised Code), sales of articles of tangible personal property which are used directly in production of articles for sale by manufacturing, processing, or refining, are excluded from the definition of retail sales and are therefore from the sales tax. The following classes of articles are considered to be used directly in manufacturing, processing, or refining, as required by the statute, and sales or purchases thereof are exempt from the tax, * * *:

"1. Actual production machinery which acts upon the raw material or components undergoing transformation into the completed product.

"2. Maintenance tools and equipment used to maintain productivity of production machinery.
"* * *

"6. Articles for the physical protection of production employees furnished without charge by the employer."

In *Ohio Ferro-Alloys Corporation* v. *Bowers,* Case No. 39099, decided by the Board on June 10, 1959, the Board held man cooler fans for the physical protection of production employees to be excluded from tax. In that case the Board stated as follows:

"Categories 7 and 8 (man cooler fans and booth for power dispatchers) are, in the Board's opinion, necessary to keep production men from being exposed to the intense heat of the

furnaces, and although not, in and of themselves, used directly in processing anything for sale are entitled to be excepted from taxation under paragraph 6 of Rule No. 39 as articles for the physical protection of production employees furnished without charge by the employer.''

In the case of *Atlantic Foundry* v. *Bowers*, Case No. 46847, decided December 26, 1961, the Board held protective equipment, which performed the same function as the equipment in the instant case, to be excluded from taxation.

An earlier decision of the Board, rendered July 12, 1955, is *General Motors Corporation, Allison Division, Aeroproducts Operations* v. *Bowers*, No. 28100. In that case, the Board held certain tempered-air supply units to be exempt from taxation. The similarity between the equipment used in that case and the instant case is as follows:

1) The major function of the air supply units was the removal of excessive heat generated in and about brazing and welding machines. An important function of appellant's dust collection equipment in the instant case, is the removal of excessive poisonous dust and abrasive particles generated in and about mixing vats and finishing machines.

2) In the General Motors case unless the excess heat produced by brazing and welding was drawn off by the air supply units, employees could not work in this area and other electrical devices function, whereas in the instant case, unless the excess dust and abrasive particles produced by mixing and finishing were drawn off by appellant's dust collection equipment, employees could not work in these areas, and the production machinery would not function properly.

3) Appellant's dust collection equipment removes phenolic resin dust (which causes dermatitis) from the mixing area and removes poisonous dust from the finishing areas within which employees may work.

It is contended by the appellant that the decision of the Board is contrary to long established interpretation of the law because Rule 39, hereinbefore quoted, in effect for over nine and one-half years, and prior thereto its predecessor, in effect for over eleven and one-half years, likewise excluded from taxation such items as the Board now holds to be taxable. The last

paragraph of this Rule, in effect from July 1, 1939 to March 5, 1952, reads as follows:

"Sales of safety equipment to persons employed in manufacturing, processing and refining, or persons operating factories, processing plants, or refineries, are not subject to the tax where such items are indispensable to 'production.'"

The uncontroverted testimony of Dr. Eddy that this equipment is necessary and hence indispensable for the protection of production employees in preventing them from inhaling poisonous dust supports the contention of the appellant.

The second function of this equipment is to protect the production machinery from damage and to maintain productivity. In this connection, it should be noted that paragraph two of the Tax Commissioner's Rule 39 expressly excludes from tax "Maintenance tools and equipment used to maintain productivity of machinery."

In our opinion, the evidence is clear and uncontroverted that if a great volume of abrasive particles goes into machinery such as shafts, bearings, bushings, gears and other moving parts of machinery, it would result in damage to the various moving parts and interfere with production. In this connection, see *Ohio Ferro-Alloys Corporation* v. *Bowers, supra,* holding the purchase of cooler fans for the protection of employees nontaxable.

Further, it should be noted that in *Ohio Ferro-Alloys Corporation* v. *Bowers,* 171 Ohio St., 283, 170 N. E. (2d), 68, the Supreme Court affirmed the Court of Appeals for the Fifth District, sitting in Stark County, wherein the Court of Appeals reversed the Board with respect to purchases of "chemicals used to treat water and the 'Packard water conditioner.'" Concerning this proposition, the court cited, in support of its decision, the case of *Union Carbide and Carbon Corporation* v. *Bowers, Tax Commissioner,* 166 Ohio St., 419, 143 N. E. (2d), 710.

We have carefully examined the brief and the authorities cited and quoted by the Board and find that the case of *Atlantic Foundry Co.* v. *Bowers, supra,* cited by the Board, is quoted only in part and omits reference to the following paragraph, among others, which, in our opinion, supports the contention of the appellant:

"The welding curtains are equipment clearly within the scope of Rule 39, being for the protection of production workers, and, therefore, are excepted from sales tax by virtue of said rule."

We have examined other cases cited and quoted by the appellee and find the same are not analogous to the facts of the instant case and, therefore, are not here applicable.

The record clearly shows that in addition to protecting production employees from physical injury, the equipment here in question protects production machinery from damage and further protects from contamination the mix from which the manufactured product is made. The appellee having failed to present any evidence contra, we can only conclude that the equipment is used directly in producing appellant's product for sale.

For the reasons stated, the decision of the Board of Tax Appeals is reversed as unreasonable and contrary to law and is, therefore, vacated, and final judgment is rendered for appellant.

ARTL and CORRIGAN, JJ., concur.