828 P.2d 304

**IDAHO STATE TAX COMMISSION,**
Appellant/Cross–Respondent,
Respondent on Appeal,

v.

**HAENER BROS., INC. and Albert J. Haener Equipment Rentals, Respondents/Cross–Appellants, Appellants on Appeal.**

No. 17729.

Supreme Court of Idaho,
Boise, December 1991 Term.

March 17, 1992.

742

Green Law Office, Boise, for respondents/cross-appellants. Cumer L. Green argued.

Larry J. EchoHawk, Idaho Atty. Gen., Theodore V. Spangler, Jr., Deputy Atty. Gen., Boise, for appellant/cross-respondent. Theodore V. Spangler, Jr. argued.

ON REHEARING

BOYLE, Justice.

In this case we are called upon to apply the production exemption provision of the Idaho Sales Tax Act, Chapter 36, Title 63,

Idaho Code. The appellants, Haener Bros, Inc., and Albert J. Haener Equipment Rentals (hereafter jointly referred to as "Haener"), are in the business of renting heavy equipment to contractors and other companies. The State Tax Commission assessed sales tax on the amounts Haener charged for the rental of its equipment to Potlatch Corporation and five independent contractors who were under contract to Potlatch. Haener contends that these rental fees are exempt from tax under I.C. §§ 63–3615(b) and 63–3622(d).

## I.

Between August of 1978 and June of 1980, Haener Brothers leased heavy equipment to Potlatch and to the five independent contractors that were engaged in construction or renovation projects for Potlatch. Between March of 1974 and June of 1980, Albert J. Haener Equipment Rentals, Inc., also leased heavy equipment to the same lessees. The rental equipment leased to Potlatch and the contractors by Haener was used to construct, install and repair production equipment and to move materials from one production unit to another.

The State Tax Commission had issued to Potlatch a "resale certificate" and number. This exempted Potlatch from sales tax for the purchase of goods within the resale exemption. The State Tax commission does not issue a "production exemption certificate" or number, but does supply forms to be used when claiming the exemption. In this case Potlatch submitted purchase orders to Haener with its resale tax exemption number. Since the State Tax Commission's forms do not really fit a rental transaction, the five contractors submitted a "resale" exemption form with Potlatch's resale number in the appropriate place. All parties recognized that the rented equipment was not for resale, but would be returned at the end of the rental period. The district court found that the use of the resale exemption form was not to mislead or conceal the nature of the transaction but an effort on the part of the contractors to claim a production exemption on behalf of Potlatch and with its knowledge and permission. The record indicates that Haener relied upon Potlatch's determination as to whether a given lease or rental transaction was taxable.

In 1981, the Tax Commission performed a sales tax audit and issued a Notice of Deficiency Determination to Haener. Haener appealed these decisions to the Idaho Board of Tax Appeals (BTA) which held a hearing on August 11, 1982, and concluded that most of the leased equipment was exempt from tax. The Tax Commission appealed the decision of the BTA to the district court. The district court reversed the BTA and upheld the Tax Commission's assessment of sales tax on the equipment rentals, but concluded that the penalties assessed by the Tax Commission were not warranted. On appeal, Haener contends that the "production exemption" provisions of I.C. § 63–3622(d) apply to the equipment rentals made by Haener to Potlatch and its independent contractors.

## II.

■ Statutes are to be construed to give effect to the intent of the legislature. *Keenan v. Price*, 68 Idaho 423, 195 P.2d 662 (1948). The literal wording of the statute is important, however, other sources should also be considered in determining legislative intent.

> [A]ccount must be taken of other matters, such as the context, the object in view, the evils to be remedied, the history of the times and the legislation upon the same subject, public policy, contemporaneous construction and the like. (citation omitted). This court takes judicial notice of public and private acts of the legislature and the journals of the legislative bodies for the purpose of ascertaining what was done by the legislature.

*Knight v. Employment Sec. Agency*, 88 Idaho 262, 266, 398 P.2d 643, 645 (1965).

■ In appropriate circumstances, courts may defer to the agency charged with the administration of a statutory provision for its interpretation. *See J.R. Simplot v. Idaho State Tax Comm'n*, 120 Idaho 849, 820 P.2d 1206 (1991).

The legislative committee which drafted the legislation that eventually became I.C. § 63–3622(d) submitted a report that "set forth the considerations which guided it in arriving at the conclusions which are expressed" in the Sales Tax Act. House Revenue and Taxation Committee Report in Support of House Bill 222 (May 4, 1965), p. 1 (hereinafter "Committee Report"). The legislative committee indicated that the report should "function as a guide to the office of the Tax Collector in administration of this act."

The Committee Report states the following concerning the application of the production exemption:

> The function of this section is to establish a conceptual exemption for materials, machinery and equipment used or consumed in the production process. The design of this section is to equate the purchase for manufacturing or production purposes with the resale exemption applied to the purchase of finished goods. If the goods which are produced by mining, farming or manufacturing are to be resold, then the material, machinery and equipment entering into their make-up should be exempt.

Committee Report, p. 32.

■ Tax exemptions are never presumed, nor will a statute granting the exemption be extended by judicial construction so as to create an exemption not specifically authorized. *Canyon County v. Sunny Ridge Manor, Inc.*, 106 Idaho 98, 675 P.2d 813 (1984); *Sunset Memorial Gardens, Inc. v. State Tax Comm'n*, 80 Idaho 206, 327 P.2d 766 (1958). Statutes granting tax exemptions must be strictly construed against the taxpayer and in favor of the state. *Hecla Mining Co. v. Idaho State Tax Comm'n*, 108 Idaho 147, 697 P.2d 1161 (1985); *Canyon County v. Sunny Ridge Manor, Inc.*, 106 Idaho 98, 675 P.2d 813 (1984); *Leonard Constr. Co. v. State Tax Comm'n*, 96 Idaho 893, 539 P.2d 246 (1975).

■ However, the production exemption must be viewed in light of the legislative intent to tax the ultimate retail consumer, thus avoiding multiple taxation. The production exemption is designed to exempt those items and costs of producing the final product for resale to the consumer. Although construction of exemption statutes is generally to be construed against the taxpayer, the overall scheme and intent of the legislation must not be overlooked. *Richardson v. State Tax Comm'n*, 100 Idaho 705, 604 P.2d 719 (1979); *accord State v. Calumet & Hecla Consol. Copper*, 259 Ala. 225, 66 So.2d 726 (1953). *See also* Davis, *The Purposive Approach to the Interpretation of Sales Tax Statutes*, 27 Ohio 429 (1966), wherein the author urges that state sales tax laws should be rationally interpreted in light of their legislative purpose.

The production exemption contained in I.C. § 63–3622(d) [1] provides three catego-

---

1. Idaho Code § 63–3622(d) states in part:

> Receipts from the sale, storage, use or other consumption in this state of tangible personal property which will enter into and become an ingredient or component part of tangible personal property manufactured, processed, mined, produced or fabricated for ultimate sale at retail within or without this state, and tangible personal property primarily and directly used or consumed in or during such manufacturing, processing, mining, farming, or fabricating operations by a business or segment of a business which is primarily devoted to such operation or operations, provided that the use or consumption of such tangible personal property is necessary or essential to the performance of such operation. Chemicals, catalysts, and other materials which are used for the purpose of producing or inducing a chemical or physical change or for removing impurities or otherwise placing a product in a more marketable condition are included within this exemption, as are other articles of tangible personal property used in the actual manufacturing, processing, mining, farming or fabricating operation. This exemption does not include machinery, equipment, materials and supplies used in a manner that is incidental to the manufacturing, processing, mining, farming or fabricating operation such as maintenance and janitorial equipment and supplies, and hand tools with a unit purchase price not in excess of one hundred dollars ($100); nor does it include tangible personal property used in any activities other than the actual manufacturing, processing, mining, farming or fabricating operation such as office equipment and supplies, equipment and supplies used in selling or distributing activities....

Idaho Code § 63–3622(d) as amended now appears as I.C. § 63–3622D. It is essentially the

ries of tangible personal property that are exempt from sales tax. The first category exempts all ingredients or materials used to form the final product. The second category exempts tangible personal property which is *primarily and directly* used or consumed in manufacturing the final product, provided the use or consumption of the property is *necessary or essential* to the performance of the manufacturing process. This second category exempts production machinery, equipment and supplies which would be used in making or forming the final product for resale. Both of these categories limit the exemption to "a business or segment of a business" which is primarily devoted to production operations. *K Mart Corp. v. Idaho State Tax Comm'n,* 111 Idaho 719, 727 P.2d 1147 (1986). The third category includes all chemicals, catalysts or other materials that effect a change in the final product, remove impurities or place the product in a more marketable condition. This third category also includes any other articles or materials used in actual production.

The production exemption specifically excludes from the exemption certain tangible personal property that is used or consumed in a manner that is incidental to the manufacturing process. The statute sets forth in a non-exhaustive list the types of items that are incidental to a manufacturing operation and includes maintenance equipment and supplies, janitorial supplies, hand tools costing less than $100.00, office equipment, and materials used in selling, distributing, transporting or researching.

The question presented to us is whether leased equipment used to construct, install and repair manufacturing equipment is exempt from state sales tax pursuant to the production exemption stated in I.C. § 63–3622(d). We will address equipment used for construction and installation separately from equipment used for repair or maintenance.

## III.

The district court concluded that Potlatch was "primarily devoted" to the

business of manufacturing and processing wood and wood products, and therefore held that the production exemption did not apply to equipment leased to construct and install production equipment. Furthermore, because the five independent contractors who also constructed and installed equipment for Potlatch were not in a business primarily devoted to the construction of manufacturing and processing equipment, the district court held that the equipment leased to construct and install the manufacturing equipment was not tax exempt. The district court noted that if Potlatch had purchased the production equipment from another entity which was primarily devoted to the construction and installation of manufacturing equipment the cost of the construction and installation might be exempt from taxation. The trial court stated in its memorandum decision:

> The difficulty with this analysis is that it ignores another bright line test imbedded within the exemption statute, that being that the manufacturing operation under examination must be by a business "primarily devoted to such operation." Here, the primary business of Potlatch is the manufacture and processing of wood and wood products. It is not "primarily devoted" to the manufacture of production equipment. While it may well be true that, if Potlatch had purchased the production equipment from another entity, which other entity was "primarily devoted" to the construction and installation of such equipment, the cost of installation might escape tax. Where, however, as here, Potlatch installs its own production equipment a different result attains. Here, the equipment used to install production equipment is not "primarily and directly used" in the manufacturing process. Such equipment is at least one step removed from the direct, primary manufacturing process of Potlatch.
>
> Stated another way, the primary and direct purpose of this equipment was the construction and installation of other equipment. Since this was not the busi-

ness to which Potlatch was "primarily devoted", the production exemption fails with respect to such construction and installation equipment.

On prior occasions this Court has reviewed the "primarily devoted" provisions of I.C. § 63–3622(d). In *Kwik Vend Inc. v. Koontz*, 94 Idaho 166, 483 P.2d 928 (1971), the taxpayer claimed that certain vending machines and microwaves were exempt from sales tax because they were "used for the purpose of producing a physical change or otherwise placing a product in a more marketable condition." In *Kwik Vend* the Court stated:

> Examination of the pertinent portions of I.C. § 63–3622(d) reflects that the exemptions provided therein were designed to apply to those businesses that were principally engaged in a "manufacturing, processing, mining, farming or fabricating operation." Businesses of that nature basically do not deal with the ultimate consumer as does the appellant here. This view is supported by the provisions of that section which deny the exemption to those engaged in the manufacturing, processing, mining, farming or fabricating activities for "equipment and supplies used in selling or distributing activities." It is recognized that appellant's machines are used in a type of "processing" of raw materials, but this use is related to the selling activities of the appellant, and thus do not explicitly come within the scope of this exemption statute.

94 Idaho at 169, 483 P.2d at 931.

In *K Mart Corp. v. Idaho State Tax Comm'n*, 111 Idaho 719, 727 P.2d 1147 (1986), the taxpayer claimed that certain advertising inserts to be included in newspapers were exempt from sales tax because of the production exemption. The Court explained the production exemption statute as follows:

> This statute exempts two types of tangible personal property: the property that becomes a component part of property sold at retail and property used or consumed in the production of property sold at retail. Further restricting each of

these two clauses is the limitation of the exemption to a "business or segment of a business which is primarily devoted to such operation or operations" as "manufacturing, processing, mining, farming, or fabricating." I.C. § 63–3622(d). This limitation modifies both the component part and consumption exemptions of the statute. If the legislature had intended to limit only the consumption exemption, the legislature would have used the disjunctive "or" rather than the conjunctive "and" between the two exemption clauses. The district court erred in finding the inserts exempt as component parts of the newspaper, without having first determined the operation to which K Mart is primarily devoted. Since K Mart is primarily devoted to retailing and not to "manufacturing, processing, mining, farming, or fabricating" (that is, K Mart is not a producer of inserts for resale), the production exemption does not apply to K Mart. K Mart must, therefore, pay use taxes on its advertising inserts.

111 Idaho at 721, 727 P.2d at 1149.

In the present case the district court found that Potlatch was a manufacturer of wood and wood products. However, unlike the taxpayers in *Kwik Vend Inc.* and *K Mart*, Potlatch is a business primarily devoted to manufacturing. Potlatch does not deal with the final consumer of its products and it is not a retail operation. Thus, any equipment or materials used or consumed by Potlatch in the manufacturing process, whether it be the manufacture of wood products or the fabrication and manufacturing of tangible personal property used to manufacture the wood or wood products, is exempt from the sales tax unless another exclusion applies.

■ The production exemption statute must be read in a reasonable manner. The Court's direction in *Richardson v. State Tax Comm'n*, 100 Idaho 705, 604 P.2d 719 (1979), applies to the present circumstances wherein the Court held:

> It is our opinion that the *sales tax exemption* in I.C. § 63–3622(d) should receive a *practical construction and not be construed to divide a manufacturing*

*operation which in fact is a continuous and integrated production process into theoretically distinct segments.* To limit this exemption to equipment which actually causes some physical change in the manufactured product is a restriction not warranted by the language of the statute.

100 Idaho at 708, 604 P.2d at 722. (Emphasis added.)

Although Potlatch's primary source of revenue is derived from the sale of wood and wood products, an integrated, continuous and important segment of Potlatch's operation is the manufacture and fabrication of its own processing equipment and materials. The manufacture and processing of wood products for ultimate retail sale in the case before us involves a complex, continuous and integrated process. Many materials and substantial capital equipment enter into the make up of the final product, even though no trace of those materials or equipment is found in the final product. In this case wood is the most easily distinguishable raw material that enters the manufacturing process. However, chemicals and other catalysts are used to treat the wood and its products, and other machines and equipment are used to form, press, cut and shape the final product. Clearly, the production exemption applies to materials and property entering into the process of completing the finished product. Furthermore, the machinery used to transform steel or other materials into the machinery that will directly be used to transform the raw wood would likewise be exempt when used by a business such as Potlatch that is primarily devoted to production operations. The entire manufacturing process involved in the present operation is an integrated and continuous part of producing the final product for ultimate retail sale. An interpretation of the exemption statute that only equipment which touches the final product or is

physically contained within the final product is exempt would be a twisted, unreasonable interpretation and one which the legislature did not intend.

In the present case, it is clear that a significant segment of Potlatch's business was devoted to the fabrication and manufacture of its own wood and wood product manufacturing equipment.[2] Fabricating includes forming "into a whole by uniting parts." *Webster's Third New International Dictionary* (1969). Since fabrication includes installation of manufacturing equipment, *i.e.,* to unite the parts, that equipment and material used to produce and fabricate the final product in the manufacturing process should also be exempt under the statute. Installation equipment and materials are "primarily and directly used" in integrating the separate parts into the manufacturing system for final use.

Clearly, machinery, materials and tools used to manufacture the final product are exempt. Furthermore, machinery and tools used to construct and make manufacturing machinery, tools and materials are likewise exempt. Therefore, we hold that the production exemption will apply when a business primarily devoted to manufacturing undertakes to manufacture and fabricate its own manufacturing equipment for use in its manufacturing process. Any tangible personal property or equipment used or consumed in the manufacturing or fabricating operation, either in the manufacture of the final product or some integrated, continuous segment thereof, including the construction and installation of the manufacturing equipment, will be exempt from the use and sales tax unless it is specifically prohibited by some other provision of the statute.

For the foregoing reasons we reverse the ruling of the district court that Potlatch's construction and installation equipment,

---

**2.** Because of the nature of Potlatch's business it may be concluded that there are only a few makers and distributors of the type of manufacturing equipment Potlatch needs. Furthermore, Potlatch or other manufacturers may develop a unique method of manufacturing its product which would require it to build its own manu-

facturing equipment. We do not think that the legislature intended the production exemption statute to discriminate against those businesses who make and fabricate their own processing equipment compared to those who purchase it from other manufacturers.

whether purchased or manufactured, is not tax exempt.

## IV.

The district court relied on *Bunker Hill Co. v. State Tax Comm'n*, 111 Idaho 457, 725 P.2d 162 (1986), and held that equipment used to repair production and manufacturing equipment was incidental to the business of manufacturing, and therefore, not primarily and directly used in the manufacture of wood and wood products. In *Bunker Hill* the taxpayer sought an exemption for oxygen and acetylene used in the welding and repair of production equipment. This Court held that the oxygen and acetylene were not "primarily and directly used or consumed in or during such processing operations, but rather, their use is incidental to and not directly related to the production process," *id.*, 111 Idaho at 461, 725 P.2d at 166, and were, therefore, not tax exempt. Although the taxpayer in *Bunker Hill* argued that there was a difference between repair and maintenance, the Court stated:

> No authority for this conclusion and no language relating to any distinction between "maintenance" and "repair" appears in the statute. To create an arbitrary distinction between "maintenance" and "repair" in order to exempt materials used in one activity, while taxing materials used in another, is not justified under the language of the statute.

111 Idaho at 461, 725 P.2d at 166.

It appears, though, that this Court in *Bunker Hill* either overlooked or ignored an important section of the Legislative Committee Report. The Committee Report clearly makes the distinction between repair and maintenance. The Report states:

> There are many problems of delineation created by a conceptual, definitory process; other provisions of this section are designed to aid in that process and, in certain areas, to eliminate difficulties of interpretation. Initially, all tangible personal property which will itself become an ingredient part of the product manufactured, processed, mined or farmed is exempt, as is tangible personal property primarily and directly used or consumed in or during such process. If such use is necessary or essential to the mining, farming or manufacturing process, the exemption applies even though the material used is consumed in the process without becoming a component part of the final product; e.g. certain reactive chemicals used in the process of producing fertilizer; material which, though not consumed in the process or appearing as a component part of the final product, is essential to its production is exempt e.g. flotation materials used in the reduction of ore. This exemption also applies to machinery and equipment which is essential to the manufacturing process, that would be the case, for instance, with the printing press, lathe or combine used in the process of producing newspapers, furniture, or wheat respectively.

> This exemption does not include material that is used in the process of maintenance incidental to the manufacturing process such as would be the case with paint, which is used to prevent the property from deteriorating, or any janitorial equipment or supplies, as distinguished from repairs. The maintenance process includes only paint or property used in the course of keeping the premises clean and in condition for operation of the manufacturing process. Such expenses are not clearly allocable to machinery, equipment or the production process but also might relate to other activities of the business and as a consequence are excluded from this exemption.

> . . . .

> Material used in <u>repair</u> of exempt equipment is material consumed in the production process as distinguished from <u>maintenance</u> and would fall within the scope of the exemption here provided, e.g. the tire for a combine, a new electric motor for a lathe, *or any other material used in repairing as opposed to maintaining the property, falls within this exemption.*

Committee Report, p. 32. (Underlined emphasis original; italic emphasis added).

Respondent State Tax Commission argues that the *Bunker Hill* analysis should control and equipment used to repair manufacturing equipment is not exempt from the sales tax. The Tax Commission directs our attention to the Committee Report which recommends exemption of items and material used as repair or replacement parts as distinguished from equipment and material such as tools used to repair machinery.[3] However, the Committee Report makes the distinction clear; and states that "any other material used in repairing as opposed to maintaining the property, falls within this exemption." The list contained in the Committee Report is non-exhaustive; it is only used as an example how the theory behind the use tax is implemented. The fact that the non-taxable list does not contain any items used to facilitate repairs does not mean that the legislature intended those items to be taxable. Repair items are directly used or consumed in the production process, while maintenance items are those items which are incidental to the production process.

Production equipment is definitely used and consumed in the production process in the sense that it wears out or breaks down. Worn out or broken production equipment must be replaced or repaired in order to facilitate the production process.

Replacing old production equipment with new production equipment is obviously exempt. Likewise, the repair or remanufacture of worn or broken production equipment is exempt. In many cases the equipment and machinery used to facilitate a repair would be the same equipment and machinery used to manufacture new production equipment. Just as machinery and equipment is used to produce and manufacture production equipment, equipment used to repair production equipment is literally used and consumed in making a physical

change to the production machinery and equipment. Contrary to the State Tax Commission's argument, the taxation scheme set forth in I.C. § 63–1322(d) and explained in the Committee Report clearly exempts machinery and equipment used to facilitate the repair of production machinery. The legal significance, for taxing purposes, between replacing new parts or repairing broken machinery and equipment is the same. Repair of manufacturing and production equipment is only one segment of "a continuous and integrated production process." *Richardson v. State Tax Comm'n*, 100 Idaho 705, 708, 604 P.2d 719, 722 (1979).

It is clear that the reasoning and rational expressed in *Bunker Hill* is directly contrary to the express intent of the legislature, therefore, we overrule that portion of *Bunker Hill* which held that there was no difference between repair and maintenance. We hereby adopt a policy which is in conformity with the legislative intent expressed in the Committee Report and our decision in *Richardson v. State Tax Comm'n*, 100 Idaho 705, 604 P.2d 719 (1979). We hold pursuant to I.C. § 63–1322(d) that repair parts and equipment used to make a repair to machinery that is primarily and directly used in the production process is exempt unless it is excluded by some other specific statutory provision. The district court's decision as it relates to repair equipment is reversed.

## V.

■ Respondent claims that the production exemption would not apply to the five independent contractors hired by Potlatch and using leased equipment to do certain construction, installation and repair on its facilities. When the independent contractors leased the equipment for the various

---

**3.** The Committee Report lists several examples of taxable and non-taxable personal property. *Id.*, pp. 34–37. The list of non-taxable items includes: tires used to replace tires on a combine; parts and accessories which become a part of machinery used to chop or process frozen potatoes; a carburetor for a tractor used primarily to pull plows, planters, combines or similar equipment; oil used in a combine, pota-

to processing machine, saw, milling machine, lathe or any similar equipment; furnaces in a foundry, freezing equipment in a food processing plant which freezes food as an element in processing; oil and lubricating grease used on exempt machinery; direct costs of sinking new mine shafts for exploration purposes; and timber used to shore shafts in mine and to replace . shoring timbers.

projects, the contractors presented Haener with resale exemption forms displaying Potlatch's resale exemption number. The district court found that because the exemption form did not specifically fit the rental of equipment, the independent contractors attempted to modify the resale exemption form to claim a production exemption. The record discloses no intent to resell the leased equipment, but at all times the independent contractors intended to return it to Haener following completion of the lease period. The record indicates that the independent contractors were simply relying on Potlatch's tax exempt status when they obtained the leased equipment.

Respondent claims that the equipment leased by the independent contractors would be taxable for two reasons. First, the equipment was not used by Potlatch in a manner that qualifies for the exemption, i.e. not "directly used" in the production. Second, the equipment was not used by a business or segment of a business which is primarily devoted to production operations.

Haener asserts that the contractors, through their work for Potlatch, are necessarily involved in production for ultimate sale or at retail, and as a result, they should be entitled to rely on Potlatch's exemption. Any other result, Haener claims would also lead to the payment of sales tax which defeats the purpose of the production exemption. Furthermore, Haener asserts that I.C. § 63–3615 and *Leonard Constr. Co. v. Idaho State Tax Comm'n*, 96 Idaho 893, 539 P.2d 246 (1975), mandate the determination that the independent contractors are exempt from taxation. We disagree.

We have already dealt with the question of whether the leased equipment was directly used in the production process. Since the leased equipment was used directly in the production and installation of production equipment it would, if used by a business or segment of a business primarily devoted to production operations, be exempt.

As we have previously noted, I.C. § 63–3622(d) sets forth the requirements for coming within the production exemption.

Haener argues that the contractors ought to come within Potlatch's exemption because they were clearly providing services to Potlatch that would have been exempt had Potlatch itself done the acts.

We find this argument to be without merit. I.C. § 63–3622(d) was amended in 1967 by the addition of the phrase "by a business or segment of a business primarily devoted to such operations." *See*, 1967 Idaho Sess.Laws, Ch. 290, § 7. To adopt Haener's argument that a contractor is entitled to the exemption if the party to whom he is providing services is so entitled ignores the clear language of the statute.

In this case, the record before us reveals no evidence indicating the contractors were a business or segment of a business primarily devoted to production operations. As the district court noted:

> While it may be that such contractors could have established that, at the times in question, they were primarily devoted to the business of constructing and installing production equipment, ... such was not the evidence in this case. From the evidence submitted, it appears that the contractors in this case did not present themselves as independently qualified to claim a production exemption....

Accordingly, Haener has failed to show that the contractors qualify for the I.C. § 63–3622(d) production exemption.

Haener nonetheless argues that *Leonard* recognized the right of a contractor pursuant to I.C. § 63–3615(b) to claim the production exemption of the entity from whom it was performing services. Haener asserts the following language in *Leonard* stands for this proposition.

> Additional support for our holding is found in a 1971 amendment to I.C. § 63–3615(b) defining "use." In that year the statute was amended, S.L.1971, ch. 55, § 1, adding language "unless such property would be exempt to the title holder under section 63–3633(d), Idaho Code. *Following that amendment it is clear that Leonard [the contractor] would not have been subject to the use tax because the property would have been*

*exempt to the titleholder, Bunker Hill, under I.C. § 63–3622(d)....* The 1971 amendment to the statute defining "use" expressly excluded a contractor's use of property when such use would have been exempt to a titleholder. We therefore must presume that before that amendment "use" was intended to include the contractor's holding of property although such was exempt to the titleholder.

*Leonard,* 96 Idaho at 896, 539 P.2d at 249. (Emphasis added.)

A review of the record in *Leonard* indicates that the issue in that case was whether Leonard owed use tax pursuant to I.C. § 63–3621. To determine whether the use tax was owing, we turned to the definition of "use" contained in I.C. § 63–3615(b).[4] Thereafter, we declared:

> It is clear that the 1967 amendment, S.L. 1967, ch. 290 § 5, expanding the definition of "use" expressly contemplated the circumstances involving the use of property in the performance of a contract in circumstances where the ultimate titleholder of the property would or would not be subject to a use tax. Leonard clearly falls within the scope of such statutory intent.... Since the clear statutory intent was to validate the imposition of a use tax against the contractor in circumstances such as presented in the case at bar and wherein no equally clear exemption was intended we must hold in favor of the Tax Commission.

*Id.* In other words, because Leonard's conduct came within the definition of "use,"

use tax was owed pursuant to I.C. § 63–3621.

As the decision noted and as the record in *Leonard* indicates, the 1971 amendment to I.C. § 63–3615(b) was not applicable to the time period for which a tax deficiency was actually sought. As a result, the statement cited and relied upon by Haener constitutes dicta. Notwithstanding this fact, this language is nonetheless instructive.

■ Contrary to Haener's interpretation of *Leonard* which in essence views I.C. § 63–3615(b) as independently creating an exemption,[5] 63–3615(b) is nothing more than a definitional provision. Properly understood as such, the effect of the 1971 amendment is merely to exclude from the definition of "use," those circumstances in which the personal property used by the contractor was exempt to the titleholder under the production exemption contained in I.C. § 63–3622(d). Therefore, this provision does not create an independent exemption, nor does it allow a contractor to rely on the exemption applicable to the party to whom it is providing services. Accordingly, our statement "following the amendment it is clear that Leonard would not have been subject to the use tax because that property would have been exempt to the titleholder, Bunker Hill, under I.C. § 63–3622(d)" was correct.

Having determined the contractors were not entitled to the production exemption because they had failed to show they were a business or segment of a business primarily devoted to production operations,

4. As I.C. § 63–3602 makes clear, I.C. § 63–3615(b) merely defines the term "use." I.C. § 63–3602 provides:
> 63–3602. Definitions.—When used in this act, the terms defined in the following sections 63–3603–63–3618, inclusive, shall gave the meanings respectively ascribed to them.

5. Haener's misplaced reliance on *Leonard* apparently results from the failure to recognize that the reason no tax would be owning after the 1971 amendment is because Leonard's conduct no longer met the definition of "use." Instead, Haener views the language
> [f]ollowing that amendment it is clear that Leonard [the contractor] would not have been subject to the use tax because the property

would have been exempt to the titleholder, Bunker Hill, under I.C. § 63–3622(d)
as a judicial interpretation in *Leonard* that the 1971 amendment creates an actual exemption.

This misinterpretation apparently also misled Haener to the erroneous conclusion that the term title holder as it appears in I.C. § 63–3615(b) necessarily refers to Potlatch under the facts of the instant case. Unlike the component materials and equipment which made up the processing plant in *Leonard,* the titleholder of which clearly was Bunker Hill, the property at issue in this case is the equipment leased by Haener and used to construct the production equipment. Accordingly, the title holder in the instant case clearly is Haener, not Potlatch.

we hold that the I.C. § 63–3622(d) production exemption does not apply to Haener's lease of equipment to the contractors. Consequently, we affirm the district court's decision finding a tax deficiency regarding the equipment leased to the contractors.

## VI.

### Summary

Although tax exemption statutes are to be construed narrowly, construction of the statute must conform to reasonable legislative intent. The production exemption exempts tangible personal property that is *primarily* and *directly* used in the production process by a business or segment of a business primarily devoted to production operations. This does not require that the materials, equipment and property used in the production process must directly touch or be actually contained in the final product. The language "primarily and directly" only means that the materials and personal property must play a primary and direct role in making the final product marketable. The manufacture of items for ultimate retail sale in our industrial society frequently involves a multifaceted, continuous, integrated plant system and manufacturing process. Machinery, equipment and materials used to fabricate, construct and manufacture other equipment, materials and machinery for manufacturing and processing is only one vital segment of the complete integrated plant system and operation. Accordingly, machinery, equipment and materials used by Potlatch to manufacture, construct and fabricate other machinery to be used for manufacturing purposes is *directly* and *primarily* used to produce a final product for retail sale and is, therefore, exempt pursuant to the production exemption set forth in I.C. § 63–3622(d).

Because Haener did not demonstrate that the independent contractors were a business or segment of a business primarily devoted to production operations, the requirements for the I.C. § 63–3622(d) production exemption have not been met.

The case is hereby remanded to the district court for entry of judgment in accordance with this decision. Costs to Haener; no fees allowed.

BAKES, C.J., and BISTLINE, JOHNSON and McDEVITT, JJ., concur.