851 P.2d 961

The CITY OF SUN VALLEY,
a municipal corporation,
Plaintiff–Respondent,

v.

SUN VALLEY COMPANY, an Idaho
corporation, Defendant–
Appellant.

The CITY OF KETCHUM, Idaho,
a municipal corporation,
Plaintiff–Respondent,

v.

SINCLAIR OIL CORPORATION, a Wyo-
ming corporation, dba Sun Valley Com-
pany, Defendant–Appellant.

IDAHO STATE TAX COMMISSION
and State of Idaho, Plaintiffs–
Intervenors, Respondents,

v.

SINCLAIR OIL CORPORATION, a Wyo-
ming corporation, dba Sun Valley Com-
pany, Defendant–Appellant.

Nos. 20136, 20159.

Supreme Court of Idaho.

April 16, 1993.

Rehearing Denied May 24, 1993.

Elam, Burke and Boyd, Chartered, Boise, for defendant-appellant Sinclair Oil Corp. Carl P. Burke (argued).

Kneeland, Korb, Collier, Legg & Hau-kaas, Ketchum, for plaintiff-respondent City of Sun Valley. Bruce J. Collier (argued).

Hawley, Troxell, Ennis & Hawley, Boise, for plaintiff-respondent City of Ketchum. Richard G. Smith (argued).

Larry EchoHawk, Idaho Atty. Gen., Carl E. Olsson, Deputy Atty. Gen., Boise, for plaintiff-respondent Idaho State Tax Com'n and State. Carl E. Olsson (argued).

TROUT, Justice.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

The City of Sun Valley (Sun Valley) originally filed this action for declaratory judgment against Sinclair Oil Corporation (Sinclair), owners of Sun Valley ski area, to determine if receipts for the sale of lift tickets are taxable under the sales tax provisions of I.C. § 63–3612. The City of Ketchum (Ketchum) and the Idaho State Tax Commission (ISTC) subsequently joined the action to determine Sinclair's responsibility to collect and remit taxes.

Sun Valley ski area consists of skiing facilities on Bald Mountain and Dollar Mountain near the cities of Ketchum and Sun Valley. As "resort cities" under I.C. § 50–1044, Ketchum and Sun Valley have the authority to impose municipal sales taxes. However, this authority is limited to sales which are subject to taxation under chapter 36, title 63 of the Idaho Code. I.C. § 50–1046(c).

Both parties submitted evidence in a hearing before the trial court. Sinclair presented evidence that it leases the land on Bald Mountain under a special use permit from the United States Forest Service. As a condition of this permit, Sinclair cannot charge for entry into the ski area and has no authority to remove individuals from the slopes or ski areas. Although Sinclair owns land on Dollar Mountain, Sinclair does not charge for entry onto this land either.

Sinclair operates the ski area on Bald Mountain under a term special use permit from the Forest Service. Under this permit, Sinclair is allowed to operate chairlifts, lodges, and rental shops among other facilities on Bald Mountain. This permit defines chairlifts as "uphill transportation facilities."

Testimony at the hearing revealed that the vast majority, over ninety-nine percent, of those who purchase lift tickets, do so for the purpose of skiing or snow boarding down the mountainside. A small number of individuals, less than one percent of all those purchasing lift tickets, purchase "foot traffic" lift tickets for purposes such as sightseeing or use of the restaurants. Less than one percent of the skiers hike up the ski slopes and ski down, without ever buying a lift ticket.

The evidence presented at the hearing also illustrated several instances in which purchasing a lift ticket was equated with the act of skiing. For example, Sinclair will revoke lift tickets from skiers for dangerous or reckless skiing. Sinclair sometimes refunds the cost of lift tickets to skiers who injure themselves on the slopes early in the day because these individuals are no longer able to ski. Under a program employed by Sinclair entitled "Kids Ski Free," children received free lift tickets as part of a promotion allowing them to ski at no cost.

After presenting evidence and testimony at the hearing, the parties brought cross motions for summary judgment. The trial court found that lift tickets were taxable under the plain meaning of I.C. § 63–3612(f) as "[r]eceipts from the use of or the privilege of using tangible personal property or other facilities for recreational purposes." The trial court also found that lift tickets were taxable under the clear language of section (e) of the statute as "[a]dmissions charges." The trial court did not consult legislative history or the ISTC regulations because it found that the statute was clear and unambiguous.

The trial court granted summary judgment in favor of the ISTC, and an interlocutory order in favor of Ketchum and Sun Valley. Sinclair appealed from the summary judgment in favor the Idaho State Tax Commission. This Court then granted Sinclair's motion to appeal the interlocutory order involving Ketchum and Sun Valley and consolidated the appeal.

## II.

## WHERE A STATUTE IS CLEAR AND UNAMBIGUOUS ON ITS FACE, A COURT NEED NOT CONSULT LEGISLATIVE HISTORY OR AGENCY REGULATIONS

As a preliminary issue, we must resolve when it is appropriate for a court to

consult legislative history and administrative regulations in construing a statute. The trial court was correct in finding that where the language of a statute is unambiguous, there is no need to consult extrinsic evidence. We have consistently held that where statutory language is unambiguous, legislative history and other extrinsic evidence should not be consulted for the purpose of altering the clearly expressed intent of the legislature. *Sweeney v. Otter*, 119 Idaho 135, 138, 804 P.2d 308, 311 (1990); *Moses v. Idaho State Tax Comm'n*, 118 Idaho 676, 678, 799 P.2d 964, 966 (1990); *Ottesen v. Board of Comm'rs of Madison County*, 107 Idaho 1099, 1100, 695 P.2d 1238, 1239 (1985).

> The most fundamental premise underlying judicial review of the legislature's enactments is that, unless the result is palpably absurd, the courts must assume the legislature meant what it said. Where a statute is clear and unambiguous the expressed intent of the legislature must be given effect.

*State, Dep't of Law Enforcement v. One 1955 Willys Jeep*, 100 Idaho 150, 153, 595 P.2d 299, 302 (1979). "Where the language is unambiguous, there is no occasion for the application of rules of construction." *Sweeney v. Otter*, 119 Idaho at 138, 804 P.2d at 311. (citations omitted) Furthermore, the court must follow express written language of the legislature over any agency regulations. Agency construction of a statute will not be followed if it contradicts the clear expressions of the legislature. *J.R. Simplot Co., Inc. v. Idaho State Tax Comm'n*, 120 Idaho 849, 862, 820 P.2d 1206, 1219 (1991).

■ However, in considering a statute where the intent of the legislature is not clear, a court may consider outside sources to determine the intent of the legislature. In *Idaho State Tax Comm'n v. Haener Bros., Inc.*, 121 Idaho 741, 828 P.2d 304 (1992), we stated that a court may look beyond the literal wording of the statute to the public and private acts of the legislature in order to determine the intent of the

legislature. *Id.* at 743, 828 P.2d at 306, *citing Knight v. Employment Sec. Agency*, 88 Idaho 262, 266, 398 P.2d 643, 645 (1965). Furthermore, where there is not a precise statutory answer, the court may give deference to an agency construction of a statute if (1) the agency has authority to administer that area of law; (2) the agency has made a reasonable construction of the statute; and (3) rationales underlying the rule of deference are present. *J.R. Simplot Co.*, 120 Idaho at 862, 820 P.2d at 1219.

## III.

### LIFT TICKETS ARE NOT TAXABLE AS ADMISSIONS CHARGES UNDER I.C. § 63–3612(e)

■ The trial court found that lift tickets were taxable under the sales tax provisions of I.C. § 63–3612(e). This statute defines a sale as "any transfer of title, exchange or barter ... of tangible personal property for a consideration...." Section (e) includes as a sale: "admission charges." We do not agree with the trial court that I.C. § 63–3612(e) clearly and unambiguously applies to lift tickets.

In construing a statute, words of the statute should be given their plain, ordinary meaning. *Walker v. Hensley Trucking*, 107 Idaho 572, 691 P.2d 1187 (1984). The plain, ordinary meaning of "admission" is:

> **3a:** an act of admitting: the fact of being admitted: permission or right to enter (as a place or a membership): ACCESS ... **4:** price of entrance: fee paid at or for entering

*Webster's Third New International Dictionary* 28 (1986). Under this definition, we cannot say that the phrase "admissions charges" in section (e) clearly and unambiguously applies to a charge for lift tickets.

Since there is some ambiguity in the statute as it applies to this case, we may consult legislative history and the tax regulations [1] to discern the intent of the legisla-

---

**1.** According to *J.R. Simplot Co.*, 120 Idaho 849, 820 P.2d 1206, it is appropriate to consider the

agency construction of the statute in this case. The ISTC has authority to administer the area of

ture. *Idaho State Tax Comm'n v. Haener Bros., Inc.*, 121 Idaho at 123, 828 P.2d at 306. In considering the phrase "admissions charge" as used in I.C. § 36–6312(e), the legislature indicated an intent to tax admissions charges to places or events. The committee report states:

> Admission charges to movies, concerts and football contests and other charges for admission to events or places are subjected to tax through definition as a "sale" by this section.... Charges made for furnishing transportation are not admission charges.

House Revenue and Taxation Comm. Report in support of House Bill 222, p. 11, 38th Leg. Session, (1965).

In interpreting I.C. § 63–3612(e), the tax regulations state:

> The term "admissions" includes the right or privilege to enter into a place.... the amount paid for the right to use a reserved seat or any seat in any auditorium, theater, circus, stadium, school building, meeting house or gymnasium to view any type of entertainment is taxable. The right to use a table at a nightclub, hotel or roof garden is taxable whether such charge is designated as a cover charge, minimum charge or any such similar charge....

IDAPA Reg. 35.02.12,6.a.

Both the committee report and the regulations indicate an intent to tax admissions to places rather than admissions to facilities. A chairlift is distinctly different from the types of places discussed in the committee report and regulations. For this reason, it is apparent that the legislature did not intend to tax lift tickets as charges for admission to the chairlifts themselves.

Furthermore, the fee for lift tickets cannot be taxed as an "admissions charge" to the ski area. Although a ski area may be a "place" for purposes of admission, Sinclair does not charge for entry into this area. According to the Special Use Permit, through which Sinclair leases land from the federal government, Sinclair cannot charge a fee for entering the ski area on Bald Mountain. It is also clear from the record that Sinclair does not charge a fee for entering the ski area on Dollar Mountain. Since Sinclair does not charge a fee for entering the ski areas, the charge for lift tickets is not an "admissions charge" under I.C. § 63–3612(e).

The Wyoming Supreme Court has considered the taxability of lift tickets under facts very similar to those of the present case. In *State Bd. of Equalization v. Jackson Hole Ski Corp.*, 737 P.2d 350 (Wyo.1987), the statute allowed a sales tax on the "price paid for each admission to any place of amusement, entertainment, recreation, games or athletic event." *Id.* at 354. The court found that the plain, ordinary meaning of "admission" was a "fee paid at or for entering." *Id., quoting Webster's Third New International Dictionary* 28 (1971). As in the present case, the Wyoming court found that the ski corporation did not, and could not, charge a fee for entry into the ski areas. *Id.* at 354–55. For this reason, the court found that lift ticket charges and other services were not taxable as admissions. *Id.* at 356. We find this reasoning persuasive and hold that charges for lift tickets are not "admissions charges" under the meaning of I.C. § 63–3612(e).

---

tax law and has made a reasonable construction of the statute that is not in conflict with the precise statutory language. A number of underlying rationales apply to the ISTC regulations. First, the ISTC's interpretation is a "rational" interpretation of necessarily broad statutory language. Second, the legislature presumably knew of the ISTC interpretation, and by not altering the statute, presumably sanctioned the ISTC interpretation. Third, the ISTC is a coordinate branch of government, and the court should recognize the ISTC's expertise in tax matters. The rationales which support the regula-

tions in this case are sufficient to allow us to consult the regulations. We note that neither party questions the agency construction of the statute in this case, the only issue is what implications about intent of the legislature can be drawn from the agency interpretation. Both parties assert that the statute may be interpreted in a manner consistent with the regulations. Accordingly, we are not called upon to defer to the regulations, only to use the regulations as an extrinsic source in determining the intent of the legislature.

## IV.

## LIFT TICKETS ARE TAXABLE AS RECEIPTS FROM THE USE OR PRIVILEGE OF USING FACILITIES FOR RECREATIONAL PURPOSES UNDER I.C. § 63-3612(f)

█ The trial court found that lift tickets were taxable under I.C. § 63-3612(f). Section (f) states that a sale includes "receipts from the use of or the privilege of using tangible personal property or other facilities for recreational purposes." The trial court found that this language clearly and unambiguously applied to lift tickets.

In *Crane Creek Country Club v. Idaho State Tax Comm'n*, 122 Idaho 880, 841 P.2d 410 (1992), we upheld a district court ruling that membership dues for a private golf club were taxable under the plain language of I.C. § 63-3612(f). In *Crane Creek*, the country club did not dispute that it offered recreational facilities to its members, the issue was whether the dues had to be related to actual use of the facilities. We held that the club dues were taxable under the express terms of the statute as receipts for the "privilege of using" recreational facilities, regardless of whether members actually used the facilities. *Id.* In so holding, we implicitly found the language of I.C. § 63-3612(f) was not ambiguous.

As applied to the facts of the case at bar, however, the language of section (f) is not as clear. Here we must decide whether chairlifts are used for a "recreational purpose." Sinclair has argued that a chairlift is a transportation service rather than a recreational facility. Although we are not entirely persuaded by Sinclair's argument, there is a legitimate question as to whether chairlifts are used for recreational purposes. For this reason we cannot agree with the trial court that the terms of I.C. § 63-3612(f) clearly and unambiguously apply to receipts for lift tickets.

Since there is some ambiguity as to what is considered a "recreational purpose" under I.C. § 63-3612(f), we may consult extrinsic sources to resolve this ambiguity. *See Idaho State Tax Comm'n v. Haener Bros., Inc.*, 121 Idaho at 743, 828 P.2d at 306. Sinclair argues that the legislative history and ISTC regulations indicate that the legislature did not intend to tax receipts for lift tickets.

First, Sinclair cites legislative history and the regulations for the proposition that the legislature intended only to tax places. The committee report explaining I.C. § 63-3612(f) states:

Charges for bowling, green fees, or membership dues paid to golf clubs, or any charge of membership fee, the primary purpose of which is to procure the use of a particular facility or building for purpose of recreation, are here covered.

House Revenue and Taxation Comm. Report in support of House Bill 222, p. 11, 38th Leg. Session (1965).

The ISTC regulations state:

Charges for bowling, green fees, membership dues, or other fees required to be paid to golf clubs, racquet clubs, swim clubs, health clubs, or other clubs and organizations of a similar nature, the primary purpose of said charges or fees being to procure the use of a particular facility, facilities, or building for the purpose of recreation or physical conditioning are subject to sales tax.

IDAPA Reg. 35.02.12,6.c. Sinclair contends that by listing various clubs, these sources indicate an intent only to tax places. Since chairlifts are not places, Sinclair concludes that they are not included in the scope of the statute.

However, the plain language of the statute specifies "facilities" not "places." The committee reports and regulations do not make any clear distinction between places and facilities, they only list various types of recreation. "Facilities" are "[t]hat which promotes the ease of any action, operation, transaction or course of conduct" and "embraces anything which aids or makes easier the performance of the activities involved in the business of a person or corporation." *Black's Law Dictionary* 531 (5th ed. 1979). The Wisconsin Supreme Court defined "facility" as "something ... that is built, constructed, installed, or established to perform some particular function or to serve

or facilitate some particular end." *Telemark Co. v. Wisconsin Dep't of Taxation,* 28 Wis.2d 637, 137 N.W.2d 407, 409 (1965), *quoting Webster's Third International Dictionary.* In *Telemark,* the court found that a ski tow was a facility.

A chairlift "makes easier" the performance of some activities and it is built to perform a particular function. In fact, under the term special use permit between Sinclair and the Forest Service, chairlifts are referred to as "uphill transportation *facilities.*" (Emphasis added.) Under this and the above definitions, chairlifts are "facilities."

Secondly, Sinclair cites the tax regulations and legislative history for the proposition that the legislature did not intend to tax services or transportation under this provision. A tax brochure issued by the ISTC indicates that ground transportation by railroad, truck, bus or taxi is not taxable. The committee report states that the legislature did not intend to tax "services" under the sales tax provisions of I.C. § 63–3612. House Revenue and Taxation Comm. Report at 7. Sinclair then argues that charges for lift tickets are not taxable because the chairlifts are transportation services.

Even though chairlifts provide a form of transportation, the charges for lift tickets may still be taxable under I.C. § 63–3612(f) because they are facilities used for recreational purposes. In *Telemark,* the Wisconsin court addressed the issue of whether rope tows and T-bar lifts were taxable as recreational facilities. In that case, Telemark Company argued that the ski tows were transportation devices, not recreational facilities. 137 N.W.2d at 408. The court found that just because a rope tow or T-bar lift furnishes transportation, "it does not because of that quality immunize itself from being a recreational facility." *Id.* The same is true in the case at bar; the mere fact that transportation is involved does not prevent chairlifts from being facilities used for recreational purposes.

Therefore, we must determine whether transportation or recreation is the purpose of the transaction in this case. *Consolidated Freightways Corp. of Delaware v. State, Dep't of Revenue & Taxation,* 112 Idaho 652, 735 P.2d 963 (1987), sets forth the standard for determining the taxability of mixed sales transactions. In cases involving mixed transactions, we look at the real object of the transaction to determine whether a purchase is a sale or a service. *Consolidated* recites the balancing test listed in the Idaho Sales and Use Tax Regulations:

> (b) In determining whether a mixed transaction constitutes a consequential service transaction, a distinction must be made as to the object of the transaction—i.e., is the object sought by the buyer the service per se or the property produced by the service.

*Id.* at 655 n. 1, 735 P.2d at 966 n. 1, *citing* IDAPA Reg. 9, 1.b.i.(b).

In *Consolidated,* the Court compared the product provided with the skills provided to determine if the transaction was taxable as a sale rather than a service. In that context the Court noted that a "critical factor determining whether the buyer intended to buy an individual's skills or the tangible end product of those skills is the buyer's end use of the tangible product." *Id.* at 656, 735 P.2d at 967, *citing Columbia Pictures Indus., Inc. v. Tax Comm'r,* 176 Conn. 604, 410 A.2d 457, 461 (1979).

Under the tax regulations and the rule in *Consolidated,* the real object of the transaction is determined by the "object sought by the buyer" and "end use of the product." Here the buyer is the purchaser of the lift ticket. The real object of the transaction depends on how we characterize the transaction. Sinclair argues that by purchasing the lift ticket, the buyer is only entitled to transportation to the top of the hill. In this limited sense, transportation to the top is more important than any recreation that the buyer may enjoy by riding the lift itself.

However, looking at the transaction as a whole, the object sought by the buyer is to go skiing. One purchases a lift ticket and rides a chairlift to facilitate the recreation of skiing. Although a very small number

of people use the Sun Valley chairlifts for other purposes, the overwhelming majority of those who purchase lift tickets, do so for the purpose of skiing. Ninety-nine percent of those who purchase lift tickets are skiers or snowboarders. Furthermore, over ninety-nine percent of all skiers on the slopes at Sun Valley purchase lift tickets. From this perspective, the end product or object sought by the buyer of a lift ticket is not just to get to the top of the hill; rather, it is the opportunity to ski down the hill. For this reason, the real object of the transaction is recreation, not transportation. Those who buy lift tickets use the chairlift to facilitate the recreational purpose of skiing. Therefore, lift ticket charges are receipts for the use or privilege of using facilities for recreational purposes under I.C. § 63–3612(f).

Accordingly, we affirm the trial court decision regarding I.C. § 63–3612(f) and find that lift tickets are taxable under this provision and the corresponding city ordinances of Ketchum and Sun Valley. No costs or attorney fees on appeal.

McDEVITT, C.J., BISTLINE, J. and BAKES, J. (Pro Tem.) (following retirement on February 1, 1993), concur.

JOHNSON, Justice, concurring and dissenting.

I concur in parts I, II, and III of the Court's opinion. I dissent from part IV (Lift Tickets Are Taxable as Receipts from the Use or Privilege of Using Facilities for Recreational Purposes under I.C. § 63–3612(f)).

I agree with the Court's opinion that the term "recreational purposes" is ambiguous. In my view, however, the analysis of the Court focusing on the object sought by the buyer would also lead us to uphold the application of the sales tax to all forms of transportation, where the object sought by the buyer is to go skiing. Inevitably, this will include buses and other forms of transportation that take people to ski or to engage in other recreation. The Court's application of the sales tax in this case conflicts with the position of ISTC that ground

transportation services are generally not taxable.